363 A.2d 1192

Marjorie H. MATSON and Sylvia S. Sales, Individually
and on behalf of all others similarly situated

v.

PARKING SERVICE CORPORATION, a Pennsylvania Cor-
poration, et al., Appellants, (three cases), and the City of
Pittsburgh, a Municipal Corporation; and the Public Park-
ing Authority of Pittsburgh, a Municipal Corporation.

Appeal of JOSEPH HORNE COMPANY.

Appeal of GIMBEL BROTHERS, INC.

Superior Court of Pennsylvania.

Argued April 19, 1976.

Decided Sept. 27, 1976.

Joseph F. McDonough, David McNeil Olds, Reed, Smith, Shaw & McClay, Pittsburgh, for appellant at No. 330.

John G. Frazer, Jr., David L. Feigenbaum, Pittsburgh, for appellant at No. 337.

Louis Caplan, David S. Watson, Thorp, Reed & Armstrong, Pittsburgh, for appellant at No. 341.

Richard H Martin, Pittsburgh, for appellant at No. 347.

Michael P. Malakoff, Berger & Kapetan, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE and VAN der VOORT, JJ.

JACOBS, Judge:

This is an appeal from a decree entered below which denied appellants-defendants' motion for summary judgment and which, sua sponte, entered summary judgment on behalf of plaintiffs-appellees. We hold that summary judgment was prematurely entered in this case and we therefore reverse.

The instant controversy arises from a class action in equity instituted by the plaintiffs-appellees Marjorie H. Matson and Sylvia S. Sales, individually and on behalf of all other persons who patronized certain public parking garages owned by the Public Parking Authority of the City of Pittsburgh and leased by the Authority [1] to appellants herein during the period in which City of Pittsburgh Ordinance 704 was in effect. Ordinance 704, which became effective on February 1, 1970, imposed a 20 per cent tax on the gross receipts from commercial parking transactions. Similar parking taxes, at rates ranging from 10 per cent to the 20 per cent rate imposed by Ordinance 704, had been in effect as a business privilege tax on operators of Pittsburgh parking facilities during the preceding eight years. Ordinance 704 was declared invalid as applied to operators of Public Parking Authority garages as a result of an action initiated by

---

1. Appellants lease indoor parking facilities located in downtown Pittsburgh from the Public Parking Authority of Pittsburgh. The parking garages are leased and operated by Appellants pursuant to the Parking Authority Law, Act of June 5, 1947, P.L. 458, 53 P.S. § 341 et seq. (1974), which authorizes creation of the Authority.

appellants, in December 1972.[2] The City of Pittsburgh was subsequently ordered to refund to appellants the taxes which were paid by them pursuant to Ordinance 704 during 1970 and 1971.

Appellees filed the present equity action on January 24, 1975 seeking imposition of a constructive trust on the sums ordered to be refunded to appellants by the City and a preliminary injunction against appellants.[3] An answer and new matter, a reply to new matter, plaintiffs' interrogatories and answers to interrogatories were filed. Hearings on the motion for a preliminary injunction were held on January 31 and February 6, 1975. On August 15, 1975 appellants filed a motion for summary judgment. Following oral argument the court below, en banc, entered the decree complained of by appellants in their appeal to this Court. That decree denied appellants' motion for summary judgment and granted, sua sponte, summary judgment for appellees. It decreed that the sums ordered refunded by the City and those sums not paid by appellants to the City after Ordinance 704's invalidation were impressed with a constructive trust for the benefit of appellees and the class which they sought to represent. Appellants, the lessee-operators, each took appeals to this Court from the decree.[4]

2. *See Public Parking Authority v. Pittsburgh*, No. 687 July Term, 1972 (C.P. Allegheny 1972), *aff'd*, 11 Pa.Cmwlth. 442, 314 A.2d 887 (1974), *allocatur refused, cert. denied*, 421 U.S. 912, 95 S.Ct. 1566, 43 L.Ed.2d 777, *reh. denied*, 421 U.S. 994, 95 S.Ct. 2001, 44 L.Ed. 2d 484 (1975). *See also*, as to owners of commercial parking lots, *Alco Parking Corp. v. Pittsburgh*, 453 Pa. 245, 307 A.2d 851 (1973), *reversed*, 417 U.S. 369, 94 S.Ct. 2291, 41 L.Ed.2d 132 (1974).

3. Appellees sought to have a preliminary injunction issued to bar repayment by the City of Pittsburgh pending disposition of their action. This motion was withdrawn on stipulation by the defendants that no refunds would be made prior to final resolution of plaintiffs' action.

4. Neither the City of Pittsburgh nor the Public Parking Authority, both of which were named as defendants in this action, has appealed.

As this Court has recently stated in *Husak v. Berkel, Inc.,* 234 Pa.Super. 452, 458, 341 A.2d 174, 177 (1975): "Summary judgment is made available by Pa. R.C.P. 1035 when the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits considered together reveal no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. . . . " Moreover, in examining the record to determine whether a genuine issue of material fact existed we must view it in a light most favorable to the appellants, *see Speyer, Inc. v. Goodyear Tire & Rubber Co.,* 222 Pa.Super. 261, 295 A.2d 143, *allocatur refused,* 222 Pa.Super. *xxxii* (1972) must keep in mind that summary judgment may only be granted in the clearest of cases, *Granthum v. Textile Machine Works,* 230 Pa.Super. 199, 326 A.2d 449 (1974) and must resolve doubts against appellees herein, who were treated below as though they were the moving party. *See Prince v. Pavoni,* 225 Pa.Super. 286, 302 A.2d 452 (1973); *Kent v. Miller,* 222 Pa.Super. 390, 294 A.2d 821 (1972).

As has been noted supra, it was *appellants* who moved for summary judgment below. However, the court en banc granted summary judgment in favor of *appellees.*[5] In support of appellants' motions for summary judgment below they argued that the undisputed facts that the tax was imposed upon them, that it was paid by them and that the parking charges and the tax were neither segregated nor separately stated on the parking tickets or on the signs upon which rates were posted entitled them to judgment as a matter of law. In support of their entitlement to judgment as a matter of law appellants relied on

5. In view of our disposition of this case we need not comment on whether summary judgment may properly be granted in favor of a *non-moving* party under Pa.R.C.P. No. 1035. *See Allegheny County Port Authority v. Flaherty,* 6 Pa.Cmwlth. 135, 293 A.2d 152 (1972), holding that this procedure is proper. *See also* Goodrich-Amram 2d § 1035(b) :6 (1976).

a line of cases [6] which have held that it is only where the ultimate purchaser pays a separately stated and segregated tax that a refund can be made to the individuals upon whom the ultimate economic burden of the tax falls. Appellants reasoned that since the tax was clearly not segregated nor separately stated it should not, as a matter of law, be refunded to appellees.

The lower court, in its opinion, concluded that the facts *were* undisputed. However, it relied on an additional fact which it found to be uncontroverted: that the tax imposed was "passed on" to the patrons. It held that "The record clearly shows that the Operator-Defendants, rather than absorb the tax, were expressly authorized by the Public Parking Authority of Pittsburgh to increase the parking rates in *exact* proportion to the tax imposed, not one cent more. Had there been no tax imposed, could the rates have been increased? All we know is that the rates were increased for one reason—and that is to accommodate the imposition of the illegal parking tax." Having concluded that it was not disputed that the tax imposed was not borne by appellants but was in fact passed on to appellees, the court below determined that, although appellants might be *legally* entitled to the fund produced by the invalid tax where the tax was not segregated, they were not *equitably* entitled thereto. In so holding the lower court relied on the principle of restitution to prevent unjust enrichment, concluding that appellees were the *beneficial* owners of the fund and that to allow appellants to obtain it would amount to a windfall to them. This holding was specifically based on the Re-

---

**6.** Appellants rely primarily on the decision in *Wayne County Produce Company v. Duffy-Mott Company, Inc.*, 244 N.Y. 351, 155 N.E. 669 (1927) and on the various cases from other jurisdictions which follow that ruling. They also cite *Planter's Nut & Chocolate Co. v. Brown-Murray Co.*, 128 Pa.Super. 239, 193 A. 381 (1937), for the proposition that our courts follow the *Wayne County* rationale.

statement of Restitution, § 48, and on Illustration 3 thereof, which state:

"Unless otherwise agreed and except as stated in § 52, a person is entitled to restitution for a benefit which he has conferred upon another as the whole or part of his performance of a contract with another, under the erroneous belief induced by a mistake of law, either shared by both or known to the other, that the manifested basic purpose of the contract can be carried out or is thereby achieved. If the purpose fails in part and the benefit is severable, there can be restitution pro tanto."

"3. A purchases goods from B, it being agreed that B is to pay a supposed sales tax thereon with money supplied by A. A pays B $1000, in addition to the purchase price to pay the tax. No tax is due. A is entitled to restitution."

The court en banc's reliance on the above statement of the principle of restitution to prevent unjust enrichment could only be appropriate if predicated upon the lower court's conclusion that the facts were uncontroverted in three particulars. Those facts were that the Public Parking Authority of Pittsburgh increased the parking rates in exact proportion to the taxes imposed, that plaintiffs-appellees represented the underlying class and that appellants would be enriched if the fund was awarded to them.

■■ The first of these factual conclusions, as has been noted above, that the tax was "passed on," was critical to the lower court's analysis. This is apparent because the above rule plainly includes a requirement that the benefit conferred be *severable*. In order to utilize the above rule the lower court had to conclude that it was uncontroverted that the tax imposed in this case was an identifiable amount that could be traced from the hands of appellees and those they purported to represent into the hands of the city. We do not agree that this

fact, which, as is stated above, formed the basis for the lower court's reliance on the principle of restitution, was uncontroverted. The decree was also necessarily predicated on factual conclusions that appellees were the persons or representatives of persons who conferred the benefit [7] and that appellants would be enriched if appellees did not obtain restitution. We likewise disagree with the conclusion reached below that these facts were not at issue.[8]

The pleadings reveal that appellants controverted appellees' averments with regard to each of the factual questions above stated. Indeed, appellees' complaint itself *avers* that questions of law and fact were present. At paragraph 33 of appellees' complaint the following issues of fact or law are identified:

"(a)  Whether the parking rates charged by Defendant parking garage operators and set by Defendant Public Parking Authority included and took into account the City of Pittsburgh parking tax imposed pursuant to Ordinance No. 704;

"(b)  Whether the sums paid as taxes by Defendant parking garage operators to the City of Pittsburgh, which sums are to be refunded to said operators, were in reality paid by Plaintiffs and other patrons of Defendants' parking garages in the form of higher parking rates than would otherwise have been assessed;

7.  The propriety of a class action may be properly considered on a motion for summary judgment. *See McMonagle v. Allstate Ins. Co.*, 460 Pa. 159, 331 A.2d 467 (1975), *Bell v. Beneficial Consumer Disc. Co.*, Pa.Super., 360 A.2d 681.

8.  Because we hold that the record, viewed most favorably to appellant, does not clearly establish that these three facts were uncontroverted we need not consider whether, assuming that those facts were admitted, appellees were equitably entitled to the judgment entered in their favor. The only holding made here is that the record was not developed sufficiently to determine who was entitled to judgment at the point in time at which it was entered.

"(c) Whether Defendant parking garage operators and Defendant Parking Authority will be unjustly enriched if they are permitted to receive and retain a refund of the taxes paid to the City of Pittsburgh pursuant to Ordinance No. 704, which sums had originally been collected by Defendant operators from Plaintiffs and other members of the class;

"(d) Whether it would violate public policy if Defendant parking garage operators are permitted to retain a refund of taxes held to have been unlawfully imposed due to their status as operators of Public Parking Authority Garages which are intended to benefit the public, including Plaintiffs and other members of the class;

"(e) Whether it would violate public policy if Defendant Parking Authority were to receive and retain any portion of the refund of taxes held to have been unlawfully imposed because of the Parking Authority's governmental function;

"(f) Whether Plaintiffs and other members of the class are third party beneficiaries of lease agreements between Defendant Parking Authority and Defendant garage operators providing that the lowest possible parking rates are to be charged;

"(g) Whether as third party beneficiaries of said leases Plaintiffs are equitably entitled to any sum received by Defendant parking garage operators as a refund of improperly assessed gross receipts taxes;

"(h) Whether a constructive trust should be imposed on this sum of previously imposed parking taxes now held by Defendant City of Pittsburgh and to be refunded to Defendant parking garage operators in that said funds were originally paid by Plaintiffs and other members of the class;  and

"(i) Whether Plaintiffs and other members of the class are entitled to an accounting for and restitution of the sums paid by them to Defendant operators for taxes, which taxes were subsequently judicially determined to be unlawfully imposed."

Since the pleadings left critical questions of fact at issue, it was only through examination of other matters of record that these factual questions could have been resolved. We have reviewed the record and find it devoid of clear resolution of those facts controverted in the pleadings. The only arguable evidence of record which tends to resolve a genuine issue of material fact is contained in the minutes of the Public Parking Authority, which reveal that parking rate increases were historically requested by appellants following increases in tax. However, those same documents also show that the rate increase requests were also predicated on other factors such as increased labor costs and that increases were borne unevenly by long and short-term parkers.

Appellees, who were treated as the moving party, had the burden of producing evidence to show that the preceding questions of fact were not at issue. *See Schacter v. Albert*, 212 Pa.Super. 58, 239 A.2d 841 (1968). We do not agree that appellees sustained that burden, on the basis of the evidence produced, to resolve the controverted allegations of the pleadings. Neither the minutes of the Public Parking Authority nor appellants' answers to appellees' interrogatories clearly resolved those questions of fact. Moreover, on the basis of the largely undeveloped record before us we cannot conclude that the lower court resolved doubts as to the existence of a genuine issue of material facts *against* appellees, as it should have. *Id.* Rather, it appears that the court below resolved doubts against *appellants.* This it may not do. In passing upon a motion for summary judgment it is no part of the court's function to decide issues of fact; its function is solely to determine whether

there is an issue of fact to be tried. *Ammerman v. Lush,* 236 Pa.Super. 231, 345 A.2d 271 (1975).

Because genuine issues of material fact were present in this case at the time that summary judgment was requested, the entry thereof in favor of *either* party was unwarranted.

Judgment reversed with a procedendo.

SPAETH, J., did not participate in the consideration or decision of this case.